**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Kathy C. Guyton, | : | Case No. 3:07 CV 2878 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff seeks judicial review of a final decision of the Commissioner denying her application for Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U. S. C. §§ 1381 and 405(g). Pending are Briefs on the Merits filed by the parties and Plaintiff's Reply (Docket Nos. 14, 20 and 21). For the reasons set forth below, the Commissioner's decision is affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff applied for SSI on August 6, 2003, alleging that she had been disabled since June 22, 2003 (Tr. 82-84). The application was denied initially and on reconsideration (Tr. 69-72, 62-65). Plaintiff's request for a hearing was granted and on June 22, 2006, a hearing was held by Administrative Law Judge (ALJ) John Pope (Tr. 357). Plaintiff, represented by counsel Loretta Wiley, Vocational Expert (VE) Dr. Samuel Goldstein and Melissa Guyton, witness, appeared and testified. On September 28, 2006, the ALJ rendered

an unfavorable decision finding that Plaintiff was not disabled as defined under the Act (Tr. 26-39). The Appeals Council denied Plaintiff's request for review on July 24, 2007, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-6).

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## FACTUAL BACKGROUND

*Plaintiff's Testimony*

Plaintiff testified at the administrative hearing that she was 36 years old, 5'6" tall and weighed 226 pounds (Tr. 364, 365). Plaintiff completed the ninth grade (Tr. 365). She resided with her parents, sister and niece in her parent's home and she has never lived alone (Tr. 364, 387). Plaintiff's most recent work was for three days in 1992. Her sister worked next to her as Plaintiff was "putting papers in boxes" (Tr. 366, 384).

Plaintiff's medical disorders include "a thick skull," heart murmur, thyroid disease, hypertension, asthma, sinus infections, carpal tunnel syndrome, backaches and migraines (Tr. 367, 380). The burning, stabbing back pain radiated to her left calf (Tr. 367, 381). Because of the head and back aches, Plaintiff could not work (Tr. 367). In fact, she had headaches at least once daily (Tr. 380). She had crying spells several times monthly (Tr. 387). Apparently, her asthma attacks were seasonal. During Spring and Summer, severe asthma attacks might occur regularly. Plaintiff reported visual problems in both eyes and blurred vision in the right eye which was not corrected by glasses (Tr. 388). Plaintiff testified that about four or five days each month she remained in bed all day (Tr. 387).

Plaintiff took medication for treatment of pain, hyperthyroidism, gastrointestinal reflux, high

cholesterol, asthma, allergies and depression (Tr. 368, 370, 377). The side effects from the allergy medication included dizziness.  She experienced stomach discomfort after taking her prescribed pain pills (Tr. 371).  The antidepressant made her sleepy (Tr. 377).  The medication for treatment of migraine headaches caused vomiting so she discontinued its use (Tr. 380).

Plaintiff was agoraphobic.  She had a panic attack whenever she left her house.  When she accompanied her sister to the grocery store, she had panic attacks if she left the van (Tr. 376).  Other than family members, Plaintiff had no social contacts or friends.  She occasionally attended church (Tr. 378).

Plaintiff estimated that she could lift eight pounds; however, she declined to estimate how long she could walk.  She thought that she could stand for five minutes and "try" to sit for thirty minutes in an eight hour day.  She testified that she was unable to walk for an hour during an eight hour period.  She did not drive because it caused her back to ache (Tr. 382-383).  She had problems with concentration and comprehension (Tr. 379).  Plaintiff testified she was unable to pay her bills, read the newspaper or keep appointments (Tr. 384-386).  She also had difficulty holding heavy books and with finger manipulation (Tr. 389, 390)

*Witness, Melissa Guyton's Testimony*

Plaintiff's sister testified that Plaintiff had been placed in special education classes after the seventh or eighth grade.  Plaintiff left school after the ninth grade (Tr. 391-392).  She confirmed that Plaintiff was apprehensive about leaving the house since early childhood.  Consequently, she was never involved in any kind of activities, never dated or attended social events (Tr. 392).

Plaintiff's sister corroborated her account of the panic attacks and that Plaintiff has always lived with their parents (Tr. 393).  She further noted that Plaintiff was dependent upon her family to help her with all aspects of her life.  Plaintiff spent a lot of time in the basement of their home (Tr. 394).

*VE Testimony*

The VE testified that an individual of Plaintiff's age, education and no past relevant work history, limited to simple repetitive tasks, and occasional contact with the public, co-workers and supervisors, could perform light office clean-up work as defined in the DICTIONARY OF OCCUPATIONAL TITLES (DOT) 929381010. The number of jobs in the metropolitan area would include 5,000 to 6,000 positions. Plaintiff could also perform work as an unskilled inspector or sorter as defined in DOT 706684010. There are approximately 3,000 positions in the region (Tr. 397).

Assuming that Plaintiff's testimony was deemed credible and her impairments were supported by the medical evidence, the VE testified that there would be no work that she could perform. In particular, her fear of leaving the house would preclude all work. The combination of her fear and physical limitations would preclude any employment opportunity of which the VE was aware (Tr. 398).

## **MEDICAL EVIDENCE**

**1.      The Balance & Hearing Center of Toledo (Tr. 317).**

Plaintiff underwent allergy skin testing and discovered she was allergic to weeds, trees, epidermals, mold, dust and grasses (Tr. 317).

**2.      Dr. Carol J. German (Tr. 205-206).**

On June 22, 2001, Plaintiff reported for her routine visual examination for right eye amblyopia with exotropia. She was diagnosed with a "lazy" right that deviated outward (Tr. 205). Dr. German also noted that Plaintiff was nearsighted (Tr. 206).

**3.      Mental Residual Functional Capacity Assessment (Tr. 253-269).**

Dr. John S. Waddell, a psychologist, opined that Plaintiff had several medically determinable impairments, namely, a depressed mood, borderline intellectual functioning, agoraphobia and panic disorder

(Tr. 259-261, 272). Plaintiff's functional limitations were only mildly limited, specifically, her restriction of activities of daily living, her ability to maintain social functioning and her ability to maintain concentration, persistence or pace (Tr. 266).

Dr. Gary White also concluded that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions and work in coordination or proximity to others (Tr. 269).

4. **Mercy Family Practice (Tr. 328-340; 346-352).**

Dr. Sonia Butt, a family practice specialist, and an unidentified family practice physician, opined on September 12, 2003, and March 4, 2005, respectively, that Plaintiff could lift/carry up to ten pounds frequently and occasionally, stand/walk for two hours, sit for four hours and bend or push/pull with limits and that she was unemployable. Both opined that Plaintiff's functional limitations were only expected to last between thirty days and nine months (Tr. 347, 350)

From May 17, 2005, through May 5, 2006, Plaintiff was treated at Mercy Family Practice. During the course of treatment, Plaintiff's medications for treatment of hyperlipidemia and hyperthyroidism were monitored (Tr. 328, 330, 333, 334, 335, 336, 337). Plaintiff's hypertension, asthma and high cholesterol were generally well controlled with medication (Tr. 331, 337, 338, 339, 340). Plaintiff was also treated for a rash on her chest (Tr. 329), toothache (Tr. 330), sinusitis (Tr. 332, 334, 335), sore throat and high fever and headaches (Tr. 333).

5. **Mercy Health Care System (Tr. 214-239).**

On June 4, 2002, Plaintiff was diagnosed with chronic sinusitis (Tr. 239). Over the next six months, several medications were prescribed to treat the symptoms (Tr. 230-238).

The attending physician noted that Plaintiff's chronic headaches resulted from chronic sinusitis on

5

February 21, 2003. Consequently, he or she prescribed an allergy medication to treat symptoms of sinusitis (Tr. 226). In March 2003, Plaintiff's sinusitis had improved (Tr. 223). In September 2003, Plaintiff obtained a series of refills for her anti-inflammatory, hyperthyroid and asthma medications (Tr. 218-220). The attending physician prescribed Xanax on October 16, 2003 to relieve the severity of panic attacks (Tr. 217).

On February 16, 2004, Plaintiff was treated for symptoms of sinusitis with an antibiotic (Tr. 214).

**6.** **Mercy Integrated Laboratories (Tr. 242-245; 292-303; 342-344).**

Plaintiff's glucose level exceeded normal levels on December 14, 2000 (Tr. 312) and her thyroid lab results exceeded normal levels on November 12, 2001 (Tr. 308).

In March 2002, Plaintiff's metabolic profile showed an increased level of glucose and cholesterol (Tr. 304). Plaintiff's triglyceride levels were normal (Tr. 305). Plaintiff's chemical profiles taken on August 19 and December 26, 2002, showed elevated glucose levels, low triglycerides and low thyroid stimulating hormone and normal triglyceride levels (Tr. 300, 301). Laboratory results on December 30, 2002, were consistent with an underactive thyroid gland (Tr. 299).

The lab results for September 15, 2003, showed an extraordinarily high level of thyroid stimulating hormone and borderline high level of cholesterol (Tr. 244, 245).

The profiles for January 6, August 12, November 4, and December 7, 2004, showed normal levels of cholesterol, triglycerides or thyroid stimulating hormone (Tr. 242, 292, 293, 297). Lab results for September 2004 showed high levels of cholesterol and a borderline high level of triglycerides (Tr. 295).

On June 20, 2005, Plaintiff's cholesterol and triglyceride levels were borderline high (Tr. 343). Her thyroid stimulating hormone level was within normal range when tested on August 9, 2005 (Tr. 342).

7. **Dr. William D. Padamadan (195-202).**

Dr. Padamadan performed an internal medicine evaluation and reported on December 2, 2003, that

6

Plaintiff's chief complaints included hypertension, hypothyroidism, asthma, back pain and depression (Tr. 198). Plaintiff's ability to grasp and to manipulate both hands was unimpeded (Tr. 199). The range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands, fingers, hips and ankles was within normal range (Tr. 201, 202). There was some deviation from the normal range in Plaintiff's ability to raise her knees against maximal resistance (Tr. 202). Overall, Dr. Padamadan did not see any indication of limitation in physical activities (Tr. 198).

8.  **Dr. James Raia (Tr. 188-194).**

Dr. Raia performed a psychological evaluation on November 18, 2003, after which he diagnosed Plaintiff with a mood disorder, panic disorder without agoraphobia and found that she had moderate difficulty in social, occupational or school functioning (Tr. 188, 193). Dr. Raia administered the Wechsler Adult Intelligence Scale III (WAIS-III) and the Wechsler Memory Scale-III (WMS-III). Plaintiff's results placed her in the mild mental retardation range of intelligence. Her subtest score showed that she read on a second grade level (Tr. 192, 193). Dr. Raia noted that Plaintiff had no problems remembering, sustaining and completing simple directions. Her response to job related stress was only mildly to moderately impaired. He suggested that because of her low level of cognitive ability, a guardian be appointed to manage her funds (Tr. 194).

9.  **Dr. Shang Y. Rhee (Tr. 313-314).**

The results of the nerve conduction study administered on May 26, 2004, showed normal results with no evidence of carpal tunnel syndrome (Tr. 314).

10. **St. Vincent Mercy Medical Center (Tr. 243; 246-251; 319-325; 341**).

On January 13, 2000, Dr. James A. Tita confirmed that when Albuterol was introduced into Plaintiff's airways, there was a significant increase in the flow of air (Tr. 323).

7

Dr. Jahangin Adil found on August 16, 2001, that Plaintiff had difficulty controlling her blood pressure, she was an asthmatic, she had an overactive thyroid gland and high cholesterol and she was obese (Tr. 285).

The levels of thyroid stimulating hormone in Plaintiff's blood were low. She was prescribed a synthetic hormone on January 13, 2003 (Tr. 252). She presented to the emergency room on January 19, 2003, for treatment of an ankle injury (Tr. 319). The results of the computed axial tomography (CAT) scan taken of Plaintiff's sinuses showed thickened mucosa on the floor and lateral walls of the right maxillary antrum on March 25, 2003 (Tr. 250). Plaintiff obtained treatment for chronic headaches on September 10, 2003 (Tr. 246).

The results of the echocardiogram administered on March 10, 2005, showed normal values (Tr. 273). There was mild mitral regurgitation (Tr. 274). Plaintiff was diagnosed with likely dermatitis (Tr. 281).

On October 4, 2005, four views were obtained of Plaintiff's wrist. None showed a fracture, dislocation, or soft tissue abnormality. Overall, the study was normal (Tr. 341).

**11.     St. Vincent's Speciality Clinic (Tr. 182-187)**.

A CT scan was taken to assess the etiology of Plaintiff's paranasal pain and frontal headaches on March 20, 2003 (Tr. 186). She was diagnosed with chronic sinusitis and inflammation of the nasal passages on June 25, 2003 (Tr. 187). On August 18, 2003, immunotherapy was employed to treat the inflammation of Plaintiff's nasal passages (Tr. 185).

**12.     The Toledo Clinic (Tr. 315-316).**

In September 2003, Dr. Lawrence M. Spetka opined that Plaintiff's CAT scan had what appeared to be a thickening of the frontal bone of the skull with a small area of calcification. He was not concerned about the small area of calcification (Tr. 316). However, he conducted a magnetic resonance imagining (MRI) test

8

in October and the results showed "nothing more than hyperostosis frontalis" and presented no basis for concern (Tr. 315). Plaintiff's front skull bone was diffusely thick (Tr. 316).

## STANDARD OF DISABILITY

The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Heston v. Commissioner of Social Security,* 245 F.3d 528, 534 (6th Cir. 2001) (*citing Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990)). First, plaintiff must demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time he or she seeks disability benefits. *Id.* (*citing* 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, if the plaintiff's impairment does not prevent her or him from doing his or her past relevant work, plaintiff is not disabled. *Id.* For the fifth and final step, even if the plaintiff's impairment does prevent him or her from doing past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Abbott,* 905 F.2d at 923).

## ALJ'S DETERMINATIONS

Employing the standard of disability, the ALJ considered the testimony adduced at the hearing and the medical evidence set forth above and made the following findings:

1. Plaintiff had not engaged in substantial gainful activity at any time during her lifetime.

2. Plaintiff had severe impairments: asthma, depression, anxiety, headaches, hypothyroidism and obesity. These medically determinable impairments did not meet or medically equal one or

    more of the listed impairments in 20 C. F. R. Part 404, Subpart P, Regulation No. 4.

3. Plaintiff's allegations regarding her limitations were not totally credible.

4. Plaintiff retained the residual functional capacity with no established exertional limitation but was limited to simple, repetitive tasks, she must avoid even moderate exposure to fumes and other environmental pulmonary irritants, she was limited to occasional contact with the public, co-workers and supervisors and she was required to work without strict time and production requirements.

5. Plaintiff had no past relevant work, she was a younger individual and she had limited education. Even with the combination of these factors, Plaintiff could be expected to make a vocational adjustment to work that existed in significant numbers in the national economy. Examples of such work included work as a packager, office cleaner and inspector/sorter.

6. Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

(Tr. 38).

This decision became the final decision of the Commissioner on July 24, 2007, when the Appeals Council denied review (Tr. 4-5).

## STANDARD OF REVIEW

Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (1994) (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id.* (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Id*. (*citing Kirk*, 667 F.2d at 536).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## DISCUSSION

Plaintiff argues that she had a valid intelligence quotient (IQ) within the range contemplated by 12.05C of the listing, that she had physical and mental impairments that imposed significant work-related limitations, that she had deficits in adaptive functioning manifested during the developmental period and that the ALJ completely ignored her sister's testimony.

Defendant contends that Plaintiff does not satisfy the capsule definition or diagnostic description for a listed impairment because there is no evidence supporting her claims of impairment before she reached 22 years of age.  Moreover, Plaintiff cannot show that she had significantly sub average general intellectual functioning with deficits in adaptive behavior.

When an ALJ determines if a claimant is disabled, the claimant carries the burden of proving that she "meets or equals a listed impairment." *Catron v. Astrue,* 2008 WL 4304502, *4 (E. D. Ky. 2008) (*citing Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (claimant must demonstrate that his or her impairment satisfies the diagnostic description for the listed impairment)).  The claimant's impairment must result from an anatomical, physiological, or psychological abnormality which can be shown using medically accepted clinical and laboratory diagnostic techniques.  *Id.* (*citing* 20 C.F.R. § 416.908).  To meet this burden, the claimant must provide medical evidence showing that he or she suffers from an impairment that meets or medically equals one of the listed impairments.  *Id*.  Specifically, the claimant must demonstrate that his or

11

her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.  *Foster, supra*, 279 F.3d at 354.

Under the listed impairments, the diagnostic description for mental retardation refers to a significant sub average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22).  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (Thomson Reuters/West 2008).  The required level of severity for this disorder is met when the requirements in A, B, C, **or** D are satisfied.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (Thomson Reuters/West 2008).  Under "C," the claimant must have a valid verbal performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (Thomson Reuters/West 2008).  The regulations specify that a claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* one of the four sets of criteria.  *Foster, supra,* 279 F.3d at 354 (*citing* 20 C. F. R. Pt. 404, Subpt. P, App. 1, § 12.00(A) *as amended by* 65 FED.REG. 50746, 50776 (August 21, 2000) (emphasis added)).

In determining if the decision herein is supported by substantial evidence, the Magistrate finds that Plaintiff failed to present evidence that would satisfy the requirements of the diagnostic description under Section 12.05C of the Listing.  Simply, Plaintiff failed to present evidence of **significantly sub average** general intellectual functioning that was manifested before she attained the age of 22.  The tests administered by Dr. White did not show that such behavior was manifested before Plaintiff attained the age of 22.  He opined that Plaintiff's current functioning was within the mild mental retardation range.  Neither did the assessment made by Dr. Waddell suggest that symptoms of Plaintiff's sub average general intellectual functioning were evident before she attained the age of 22.  Instead, Dr. Waddell suggested that Plaintiff's

activities were more consistent with borderline intellectual functioning.

Plaintiff's sister suggested that her impairment was manifested prior to the ninth grade; however, Plaintiff failed to present any school records or other clinical and/or laboratory tests that suggest that the impairment of the required significance was manifested prior to the time she entered the ninth grade.  Since Plaintiff failed to provide sufficient evidence to overcome the threshold element of the diagnostic description, the Magistrate does not address the propriety of the ALJ's discussion on the severity of Plaintiff's impairment or whether her physical and mental impairments imposed significant work-related limitations.  Such factors are relevant only to the severity of the established disorder.  The ALJ's decision that Plaintiff failed to meet the medical Listing 12.05C is supported by the weight of the evidence and the Commissioner's decision as to this finding is affirmed.

Plaintiff relies upon an unpublished decision by the Sixth Circuit Court of Appeals in which the Court addressed whether the district court's conclusion that the claimant functioned on an intellectual level above the mental retardation range was supported by "substantial evidence." *McPeek v. Secretary of Health and Human Services*, 19 F. 3d 19 (Table); 1994 WL 56929 * 2 (6th Cir. 1994).  The Magistrate finds this case distinguishable from the case at bar as there was an academic record with failing grades which the court found was consistent with significantly impaired intellectual performance before the age of 22.  In this case, Plaintiff can point to no empirical evidence in the record that suggests Plaintiff's level of intellectual functioning before she attained 22 years of age was within the sub average general intellectual functioning range.

Plaintiff also argues that the ALJ completely ignored her sister's testimony.

Although 20 C.F.R. § 404.1513(d) provides that an ALJ may consider evidence from a wide variety of sources other than acceptable medical sources, the Regulation does not mandate that an ALJ specifically discuss such evidence or that an ALJ make explicit that such evidence was considered in the disability

13

determination.  *Anders v. Astrue,* 2008 WL 817105, * 5 (E. D. Ky. 2008).  Generally, in a Social Security disability benefits case, an ALJ need not discuss every piece of evidence in the record for the decision to stand.  *Id.* (*citing Thacker v. Commissioner of Social Security,* 2004 U. S App. LEXIS 10277 at *9, 2004 WL 1153680 (6th Cir. 2004); *Barlow v. Sullivan,* 1991 U. S. App. LEXIS 4121 at * 16, 1991 WL 29215 (6th Cir. 1991); *see also Allison v. Commissioner of Social Security,* 1997 U. S. App. LEXIS 4483 at *9, 1997 WL 103369 (6th Cir. 1997)).  However, the Sixth Circuit has held that perceptible weight must be afforded to lay testimony where it is fully supported by the medical evidence.  *Lashley v. Secretary of Health & Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also Stamper v. Harris,* 650 F.2d 108, 111 (6th Cir.1981)).

The ALJ was not required to discuss the testimony given by Plaintiff's sister or make explicit that such evidence was considered in the disability determination.  The failure of the ALJ to mention Plaintiff's sister's testimony in the decision does not constitute error.

## CONCLUSION

For these reasons, the Commissioner's decision is affirmed and the case is dismissed**.**

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge


Date: November 18, 2008